**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| QUALITY INTERNATIONAL PACKAGING, LTD., D/B/A NOBLE GIFT PACKAGING, | Civil Action No.: 13-5235 |
| Plaintiff, | **OPINION** |
| v. | |
| CHAMILIA INC., *et al.*, | |
| Defendants. | |

**CECCHI, District Judge.**

Before the Court is the motion of Defendants Swarovski International Holding, A.G. ("Swarovski International"), Daniel Swarovski Corporation A.G. ("Daniel Swarovski") (collectively, the "International Swarovski Defendants"), and Swarovski US Holding Limited, "Swarovski US"), (collectively, the "Swarovski Defendants") to dismiss all claims asserted against the Swarovski Defendants in Plaintiff's Amended Complaint for lack of personal jurisdiction and failure to plead a plausible claim against them in accordance with Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), respectively. (ECF No. 71). The International Swarovski Defendants argue that this Court lacks personal jurisdiction over them pursuant to Rule 12(b)(2). The Swarovski Defendants jointly argue that Plaintiff's complaint is insufficient to state a claim against them pursuant to Rules 8(a) and 12(b)(6). The Swarovski Defendants also jointly argue that Plaintiff cannot be entitled to punitive damages under any circumstances. The Court decides the motion

without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.¹ For the reasons set forth below, the Court will grant the Swarovski Defendants' motion to dismiss.

I. **BACKGROUND**

A. **Facts**

This case arises out of a commercial dispute between Plaintiff Quality International Packaging Limited ("Quality International") and non-moving defendants Chamilia Inc. and Chamilia, LLC (collectively, "Chamilia"). According to the Amended Complaint, Plaintiff is an international company that designs, manufactures, and sells display and packaging materials to jewelry wholesalers and retailers. (Am. Compl. ¶ 1, ECF No. 68). Plaintiff alleges that Chamilia is an international purveyor of jewelry and jewelry-related items. (Id.) During the relevant time period, Plaintiff manufactured display and packaging products for Chamilia's jewelry pursuant to Chamilia's purchase orders. (Id.) Defendants allege that towards the end of 2011, Chamilia's retail customers began to complain about certain defects in the display cases supplied by Plaintiff. (Counterclaim ¶ 8, ECF No. 9). A business dispute arose between Plaintiff Quality International and Defendant Chamilia over the quality of these goods and Chamilia's contractual duty to accept and pay for them. (Id. ¶¶ 9-12). Plaintiff alleges that Chamilia ordered certain goods through purchase orders, accepted them, but refused to remit payment in exchange. (Am. Compl. ¶¶ 13-45). The Swarovski Defendants contend those goods were defective and therefore Plaintiff is not entitled to payment. (Defs.' Br. in Supp. at 2-3, ECF No. 71-1).

---

¹ The Court considers any new arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

The parties agree that the Swarovski Defendants acquired Chamilia in 2013. The present motion, which seeks to dismiss all of the Swarovski Defendants but not Defendant Chamilia, turns on the legal effect of that acquisition. Swarovski International is the parent company of Swarovski US. (See Brown Decl. ¶ 4). Swarovski US purchased the shares of Chamilia from individual shareholders using funds provided by Swarovski International. (Am. Compl. ¶ 35; Defs.' Br. in Supp. at 9-10). Plaintiff claims that the Swarovski Defendants are liable for Chamilia's debt because they acquired Chamilia along with "all of its assets, liabilities, debts, and obligations" prior to the issuance of the allegedly unpaid invoices (Am. Compl. ¶¶ 1, 34, 36). The Amended Complaint also alleges that the Swarovski Defendants are liable under a "successor liability" theory for debts occurring prior to the acquisition. (Am. Compl. ¶ 41). Under this reasoning, Plaintiff alleges that the Swarovski Defendants are liable for the invoices that predate and postdate its acquisition of Chamilia.

### B.     Procedural History

Plaintiff filed the original Complaint in this matter on August 30, 2013. (Compl., ECF No. 1). On October 28, 2013, Swarovski US and Swarovski International moved to dismiss the original Complaint under Fed. R. Civ. P. 8(a) and 12(b)(6). (ECF No. 10). Swarovski International also moved to dismiss the original Complaint for lack of personal jurisdiction. (Id.) On May 30, 2014, this Court granted the motion to dismiss in-part pursuant to Rule 12(b)(2) for lack of personal jurisdiction over Defendant Swarovski International. (ECF Nos. 37, 38). The Court's Order provided Plaintiff ninety (90) days to take discovery limited to the issue of personal jurisdiction over Swarovski International. (Id.) In light of the aforementioned discovery period, the Court administratively terminated the motion to dismiss for failure to state a claim. (Id.) Subsequently, Plaintiff served jurisdictional discovery and the Swarovski Defendants responded. On December

3

2, 2014, Plaintiff filed the Amended Complaint, joining Daniel Swarovski as a defendant and pleading some additional factual allegations, including the undisputed allegation that Swarovski International provided Swarovski US with the funds required to purchase the outstanding shares of Chamilia. (See generally Am. Compl.). Chamilia filed its Answer, Affirmative Defenses, and Counterclaim in response to the Amended Complaint on December 23, 2014. (ECF No. 70. On the same day, the Swarovski Defendants filed the present motion to dismiss for lack of personal jurisdiction and failure to state a claim. (Defs.' Motion to Dismiss, ECF No. 71).

## II.   SUBJECT MATTER JURISDICTION

The Amended Complaint alleges this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because all Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000. (See Am. Compl. ¶ 11).

## III.   LEGAL STANDARD

### A.   Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing sufficient facts to show jurisdiction. Marten v. Godwin, 499 F.3d 290, 295-96 (3d Cir. 2001). In weighing these facts, a court must accept the plaintiff's allegations as true—construing disputes in favor of plaintiff. Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002). However, once these allegations are contradicted by an opposing affidavit or other evidence, a plaintiff must "respond with actual proofs, not mere allegations." Patterson by Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir. 1990). When plaintiff so responds, and the court does not hold an evidentiary hearing on the motion, the court must then determine whether plaintiff's pleadings and supporting proofs set out a prima facie case. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).

4

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009). New Jersey's long-arm statue extends jurisdiction over non-residents "to the uttermost limits permitted by the U.S. Constitution." Genesis Bio Pharms., Inc. v. Chiron Corp., 27 F. App'x 94, 98 (3d Cir. 2002) (quoting Charles Gendler & Co, Inc. v. Telecom Equip. Corp., 102 N.J. 460, 468, 508 A.2d 1127, 1131 (1986)). Thus, the exercise of personal jurisdiction in New Jersey must satisfy constitutional due process. Metcalfe, 566. F.3d at 334. This analysis "focuses on the nonresident defendant's 'minimum contacts' with the forum." Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). "Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction." Metcalfe, 566 F.3d at 344. "A defendant is subject to general jurisdiction when it has continuous and systematic contacts with the forum state." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001). A defendant is subject to specific jurisdiction if (1) the defendant purposefully directed its activities at the forum; (2) the litigation arises out of those activities; and (3) whether the exercise of jurisdiction comports with fair play and substantial justice. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007).

**B.   Failure to State a Claim**

When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). The court should, however, disregard any conclusory allegations proffered

5

in the complaint. Id. Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 556 U.S. at 679). This standard requires more than a mere allegation of an entitlement to relief. Id. Under Rule 8(a), "[a] complaint has to 'show' such an entitlement with its facts." Id. A claim is only plausible if the facts pleaded allow a court to reasonably infer that the defendant is liable for the misconduct alleged. Id. at 210 (quoting Iqbal, 556 U.S. at 678). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. Id. at 211 (quoting Iqbal, 556 U.S. at 679).

When considering a motion to dismiss, a district court generally may not consider matters "extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997) (citing Angelastro v. Prudential–Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir.1985)). Consideration of such matters generally converts the motion into a motion for summary judgment. Cahill v. City of New Brunswick, 99 F.Supp.2d 464, 470 (D.N.J.2000) (citing Fed. R. Civ. P. 12(b) ("If, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment....")). "However, an exception to the general rules is that a document *integral to* or *explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." Burlington Coat, 114 F.3d at 1426 (quotations omitted); *see also* Winer Family Trust v. Queen, 503 F.3d 319, 328 (3d Cir.2007).

## IV. DISCUSSION

### A. Plaintiff Has Not Set Forth a Prima Facie Case for Personal Jurisdiction over

6

**the International Swarovski Defendants**

The Amended Complaint alleges that this Court has personal jurisdiction over Swarovski International "insofar as they reside in and or conduct business in this State and in this district. . . ." (Am. Compl. ¶ 12). Specifically, Plaintiff alleges the International Swarovski Defendants are subject to this Court's jurisdiction because Chamilia and Swarovski US are the alter egos and agents of the International Swarovski Defendants. (Am. Compl. ¶ 10).[2] Plaintiff's alternative theory of specific jurisdiction relies on the argument that the International Swarovski Defendants place certain products into the "stream of commerce" in New Jersey. (Pl.'s Br. in Opp. at 27). In support of its burden to establish jurisdiction, Plaintiffs allege that (1) Swarovski International supplied the funds used to purchase Chamilia, (2) the Swarovski Defendants do not observe corporate formalities, and (3) marketing efforts by the Defendants, including their website, indicate that they operate as one entity. (Am. Compl. ¶¶ 27-36). As proof, Plaintiff submits copies of the jurisdictional interrogatories and document production requests served on Defendants as well as Defendants' responses. (Declaration of Ari Weisbrot ("Weisbrot Decl."), Exs. 1-6). Plaintiff also submits a document entitled "Corporate Fact Sheet" purportedly downloaded from "swarovskigroup.com" as well as the LINKEDIN profile page of Douglas P. Brown. (Weisbrot Decl., Exs. 6-7).[3]

In moving to dismiss, Defendants submitted declarations attesting that the International

---

[2] In the Amended Complaint and its opposition papers, Plaintiff generally refers to the unnamed individuals who allegedly control the Swarovski Defendants as the "Beirat."
[3] The Court is aware of the January 14, 2015 letter from Plaintiff's counsel bringing attention to certain documents produced by Defendants that purportedly identify Chamilia as "Swarovski NA LTD DBA Chamilia." (ECF No. 75). However, for the purposes of determining personal jurisdiction, the Court notes that "Swarovski NA LTD" is not a party to this case, and therefore its relevance to the present inquiry is dubious.

Swarovski Defendants are foreign entities that do not directly transact business in New Jersey, own any real estate in New Jersey, or have any employees in New Jersey (Declaration of Douglas P. Brown ("Brown Decl."), ECF No. 71-2, 4). Defendants assert that Swarovski International exerts no control over Swarovski US. (Brown Decl. ¶ 12). Defendants also submit an exhibit entitled "Unit Purchase Agreement", purporting to be the instrument by which Swarovski US acquired all of the outstanding membership interests in Chamilia. (Brown Decl., Ex. A.)

### 1. General Jurisdiction

The main thrust of Plaintiff's personal jurisdiction assertion is that the International Swarovski Defendants have such continuous and systematic contacts with New Jersey that this Court has general jurisdiction over them. (Pl.'s Br. in Opp. at 25-27). It is well-established in New Jersey that the forum contacts of a subsidiary corporation will not be imputed to a parent corporation to establish general jurisdiction without a showing of something more than mere ownership. Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601, 609 (D.N.J. 2004) (internal citations omitted). Instead, something more akin to an alter ego or agency relationship is required. Fisher v. Teva PFC SRL, 212 F. App'x 72, 76 (3d Cir. 2012) (citing Lucas v. Gulf & W. Indus., Inc., 666 F.2d 800, 806 (3d Cir. 1981) ("Other factors which may have a bearing on the jurisdictional issue are whether the subsidiary corporation played any part in the transactions at issue, whether the subsidiary was merely the alter ego or agent of the parent, and whether the independence of the separate corporate entities was disregarded")); but see Daimler AG v. Bauman, 134 S. Ct. 746, 759-60 (2014) (casting doubt on whether an agency relationship may be enough to subject a parent corporation to jurisdiction based on the contacts of its in-state subsidiary).

Plaintiff has not set out a prima facie case for general jurisdiction based on an alter ego theory. The Third Circuit has articulated several factors a district court can consider to find

whether a parent corporation is subject to its jurisdiction based on an alter ego theory including

> gross undercapitalization ... 'failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.'

Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 171 (3d Cir. 2002) (quoting Am. Bell Inc. v. Fed'n of Tel. Workers of Pennsylvania, 736 F.2d 879, 886 (3d Cir. 1984)). Evaluating whether either subsidiary was undercapitalized, the Court finds Plaintiff has not established this was the case. Generally, undercapitalization requires a showing that the level of capitalization was "very small in relation to the nature of the business of the corporation and the risks . . . measured as of the time of formation of the corporation." Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160, 200, 903 A.2d 475, 499 (App. Div. 2006) (quoting 1 Fletcher Cyc. Corp. § 41.33). The only evidence offered to show that Swarovski US was undercapitalized is the fact that Swarovski International provided Swarovski US with the funds used to purchase the outstanding shares of Chamilia. (Am. Compl. ¶ 35). Defendants argue those funds were provided as a loan. (Defs.' Reply at 7). However, even taking Plaintiff's view of that transaction as true, the Court cannot find that Swarovski US as a whole was undercapitalized based on the record presented. Plaintiff has neither pleaded beyond bare bones allegations nor submitted evidence that Swarovski US did not have the capital to meet its day to day operating costs and liabilities. See Wrist Worldwide Trading GMBH v. MV Auto Banner, No. CIV.A. 10-2326 ES, 2011 WL 5414307, at *5 (D.N.J. Nov. 4, 2011) (finding allegations of capitalization in the amount of $10,000 insufficient to survive motion to dismiss). At most, all Plaintiff has shown is that Swarovski US did not have the cash on hand to purchase the shares of another corporation–the

9

type of strategic acquisition that presumably often requires financing.

Plaintiff further argues that Defendants do not adhere to any corporate formalities. Plaintiff asserts a host of allegations regarding how Defendants market their products collectively as well as allegations that Douglas Brown was "re-assigned" from president of Swarovski US to President of Chamilia. (Pl.'s Br. in Opp. at 17; see also Weisbrot Decl.) The only evidence submitted is a two page document downloaded from Defendants' website, entitled "Corporate Fact Sheet," that appears to describe what business activities the Swarovski entities engage in globally. (See Weisbrot Decl., Ex. 6). On its face, the Corporate Fact Sheet does not show that Swarovski International or Daniel Swarovski controls Swarovski US or Chamilia. After examining the Corporate Fact sheet submitted, the Court finds that it does not substantiate a finding that Swarovski US and Chamilia are the mere instrumentality of Swarovski International or Daniel Swarovski. See Cohen v. Kurtzman, 45 F. Supp. 2d 423, 432 (D.N.J. 1999) (complaint dismissed where affidavit as to jurisdiction "constitutes mainly unsubstantiated conjecture" and affiant "does not, and it appears he cannot, point to any competent evidence to corroborate his allegations."). Therefore, Plaintiff has not met its burden to establish the International Swarovski Defendants are subject to the general jurisdiction of this Court under an alter ego theory.

Plaintiff also argues that the International Swarovski Defendants are subject to this Court's general jurisdiction because Chamilia and Swarovski US act as their agents within the forum State of New Jersey. Under New Jersey law,[4] "[t]o determine if a subsidiary is acting as an agent of the

---

[4] No party has disputed that New Jersey law applies. This comports with New Jersey choice-of-law principals, which instruct courts to apply the law of the state with the "most significant relationship" to the dispute. N. Am. Steel Connection, Inc. v. Watson Metal Prods. Corp., 515 F. App'x 176, 179 n.7 (3d Cir. 2013) (quoting Fu v. Fu, 160 N.J. 108, 118, 733 A.2d 1133, 1138 (N.J. 1999)). Because it appears as though Plaintiff is a

parent courts consider whether: (1) the subsidiary is doing business in the forum that would otherwise be performed by the parent; (2) there is common ownership of the parent and subsidiary; (3) there is financial dependency; and (4) the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies." Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 513 (D.N.J. 2008) (internal citations omitted). Plaintiff's agency arguments are not sufficiently supported by the Amended Complaint and the evidence submitted in opposition to the present motion.

With respect to the first agency factor—whether the subsidiary is doing business in the forum that would otherwise be performed by the parent—Plaintiff does not appear to cite to any alleged facts in the Amended Complaint or evidence in its opposition brief. (Pl.'s Br. in Opp. at 20) (describing the International Swarovski Defendants as the "octopus" in a scheme where Swarovski US and Chamilia are the "tentacles" without providing specific examples). Its argument on this factor amounts to no more than half a page of legal conclusions. (Id.)

Plaintiff points to Defendants' corporate structure in support of the second agency factor regarding common ownership. While it appears uncontested that common ownership does exist among Defendants Swarovski US and Chamilia by way of Swarovski International, that alone is not sufficient to establish agency. If common ownership, devoid of evidence supporting the other agency factors, were sufficient to establish general jurisdiction then the limits on personal jurisdiction over foreign corporations would be entirely obviated. See Carfagno v. Ace, Ltd., No. CIV. 04-6184 (JBS), 2005 WL 1523530, at *6 (D.N.J. June 28, 2005) (holding defendant-parent

---

New Jersey corporation, and there is no state in the record with a more significant relationship to this case, the Court will apply New Jersey law.

11

corporation's ownership of subsidiary that had New Jersey contacts was not enough to establish general jurisdiction over parent corporation).

Plaintiff again reiterates its argument about the financing of Swarovski US's purchase of Chamilia in support of the third agency factor–that Swarovski US is financially dependent upon Swarovski International. (Pl.'s Br. in Opp. at 21). Plaintiff concludes that because Swarovski US did not have the funds to purchase Chamilia, the International Swarovski Defendants "provide *all* funding for Swarovski US's operations." (Id. (emphasis in original)). This argument is completely conclusory, and it is not supported with specific evidence showing that Swarovski US needs financial support from its parent corporation on a regular basis or for expenses other than the strategic acquisition of other corporations.

To substantiate the fourth factor, Plaintiff cites to Defendants' website, the opinion in Ebeling & Reuss, CIV. A. No. 88-4878, 1988 WL 82865 (Aug. 4, 1988), and the employment history of Douglas P. Brown. (See Weisbrot Decl., Exs. 6-8). With respect to the website as it relates to the Defendants' marketing activities, Plaintiff has not submitted any evidence showing that the International Swarovski Defendants actually control that website. Second, nothing in Douglas P. Brown's LINKEDIN page, showing that he has previously served as an executive for "Swarovski," suggests that the International Swarovski Defendants "interfere" with the personnel of Swarovski US or Chamilia. See Telcordia Technologies, Inc. v. Alcatel, S.A., 2005 WL 1268061 (D. Del. 2005) (finding no personal jurisdiction when subsidiary and parent only had one overlapping officer and when the subsidiary maintained its own executive team and financial statements). Lastly, Ebeling & Reuss, a district court opinion from 1988 finding that *specific* jurisdiction in Pennsylvania was likely on a very different set of facts, is no more applicable to finding general jurisdiction in New Jersey now than it was in this Court's prior opinion. See

Quality Int'l Packaging, Ltd. v. Chamilia Inc., No. CIV.A. 13-5235, 2014 WL 2465262, at *3 (D.N.J. May 30, 2014) (stating Ebeling & Reuss "may no longer be relevant to this inquiry."). Aside from common ownership, Plaintiff has not submitted evidence supporting general jurisdiction over the International Swarovski Defendants through a theory of alter ego or agency.

This Court therefore finds that Plaintiff has not shown by competent evidence that this Court may assert general jurisdiction over the International Swarovski Defendants through a theory of agency.

### 2. Specific Jurisdiction

Plaintiff argues that this Court has specific jurisdiction over the International Swarovski Defendants because they placed products into the "stream of commerce" with the intent that those products would reach the State of New Jersey or, alternatively, because it was reasonably foreseeable that their products would reach New Jersey. (Pl.'s Br. in Opp. at 27-28). Under Asahi, Plaintiff argues, the requisite "minimum contacts" are established because all Defendants collectively sell "products in 70 boutiques that it directly or indirectly owns." (Id.); see also Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S. 102, 112 (1985) (finding no specific jurisdiction where international defendant did not have an office, agents, employees, or property in the forum state).

First, aside from the alter ego and agency arguments Plaintiff makes in support of general jurisdiction, Plaintiff provides no evidence that the International Swarovski Defendants actually placed products into the stream of commerce in New Jersey. Plaintiff's cursory allegations do not rebut Swarovski's sworn declaration that it is a mere holding company. (Brown Decl. ¶ 6, ECF No. 71-4). That said, even if Plaintiff's conclusions that all Defendants collectively placed products into the stream of commerce were true, specific jurisdiction requires that the minimum contacts

13

by the foreign party give rise to the cause of action at issue. See Carfagno v. Ace, Ltd., No. CIV. 04-6184 (JBS), 2005 WL 1523530, at *7 (D.N.J. June 28, 2005); see also U.S. Golf Ass'n v. U.S. Amateur Golf Ass'n., 690 F. Supp. 317, 320 (D.N.J. 1988). As pled in the Amended Complaint, the conduct that gave rise to the present cause of action relates to Plaintiff Quality International's manufacture, sale, and distribution of goods to Chamilia, and Chamilia's subsequent alleged refusal to pay for those goods. Plaintiff fails to explain how products allegedly placed into the stream of commerce by the International Swarovski Defendants give rise to the breach of contract and other related claims. See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 106 (3d Cir. 2009) (recognizing that the stream of commerce test can only be used to establish specific jurisdiction). Therefore, Plaintiff has not met its burden to establish specific jurisdiction over the International Swarovski Defendants.

The Court finds that, even after Plaintiff was permitted to take jurisdictional discovery in this matter, the pleadings and supporting proofs submitted by Plaintiff do not set forth a prima facie case for personal jurisdiction against the International Swarovski Defendants. The Court will grant the motion of Swarovski International and Daniel Swarovski as to personal jurisdiction pursuant to Rule 12(b)(2).

**B.     The Complaint Does Not State a Claim against the Swarovski Defendants**

Plaintiff alleges that the Swarovski Defendants are liable for any judgment incurred in this matter arising out of what amounts to a breach of contract or book account claim against Chamilia. The Amended Complaint alleges that Swarovski International acquired Chamilia "through" Swarovski US (Am. Compl. ¶ 1, 34), Swarovski International effectively owns Swarovski US (Am. Compl. ¶ 7), and Swarovski International acquired Chamilia's liabilities (Am. Compl. ¶ 36, 43). In its opposition to the present motion, Plaintiff appears to advance two theories of liability

arising out of this acquisition: (1) that the Swarovski Defendants expressly acquired all the debts and obligations of Chamilia when it entered into the Unit Purchase Agreement and (2) principals of alter ego liability. (Am. Compl. ¶ 2). Neither of these theories, as alleged in the Amended Complaint and integral documentation, state a plausible claim for relief under Rule 8(a) and therefore the Swarovski Defendants are entitled to dismissal under Rule 12(b)(6).

First, Plaintiff incorrectly asserts that Swarovski US expressly assumed all of the debts and obligations of Chamilia through the Unit Purchase Agreement.[5] It is well settled that "where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor." Glynwed, Inc. v. Plastimatic, Inc., 869 F. Supp. 265, 271 (D.N.J. 1994) (internal quotations omitted). This principal also applies where the parent corporation acquired the subsidiary through the purchase of the stock. See Portfolio Fin. Servicing Co. ex rel. Jacom Computer Servs. v. Sharemax.com, Inc., 334 F. Supp. 2d 620, 623, 629 (D.N.J. 2004) (finding successor liability could not be imputed on parent company that purchased 100% of subsidiary corporation's stock). There are exceptions to this general rule. Id. For example, the purchasing corporation may be liable for the debts of the predecessor where there is an express or implied agreement "to assume the other company's debts and obligations." Glynwed, Inc. v. Plastimatic, Inc., 869 F. Supp. at 271.

Here, the Swarovski Defendants seem to have acquired all Chamilia shares from third party

---

[5] The Court will consider the Unit Purchase Agreement—the written instrument by which Swarovski US purchased the outstanding shares of Chamilia from individual shareholders—because documents integral to or relied upon in a complaint are deemed to be a part of a complaint. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (considering integral document on motion to dismiss without converting to motion for summary judgment).

15

sellers, and therefore the relationship between the Swarovski Defendants and Chamilia appears to be one of a parent and a wholly-owned subsidiary. (Am. Compl. ¶ 1 ("Defendant Swarovski acquired Chamilia in or about June of 2013"); (see also Unit Purchase Agreement § 2.1)). Accordingly, a successor liability theory running from Chamilia to the Swarovski Defendants is subject to dismissal, as the only proper theory of successor liability would run from the former owners of Chamilia to the Swarovski Defendants–the sellers and buyers in that transaction. See Lefever v. K.P. Hovnanian Enter., Inc., 160 N.J. 307, 310 734 A.2d 290, 292 (1999) ("The general rule of corporate-successor liability is that when a company sells its assets to another company, the acquiring company is not liable for the debts and liabilities of the selling company simply because it has succeeded to the ownership of the assets of the seller") (emphasis added)).

Plaintiff contends that § 10.2(a) of the Unit Purchase Agreement makes it so the Swarovski Defendants acquired the obligations of Chamilia. The plain and unambiguous language of that agreement clearly shows that Plaintiff's interpretation is incorrect. The section reads:

> From and after the Closing, Purchaser will cause the Company to be owned, operated, capitalized, sold, wound-down, dissolved, liquidated and the like, as the case may be, in such manner as it shall determine in it sole discretion, but in any event in such a manner that none of the Founders or Sellers or any of their respective related persons or entities will incur or be responsible for any liability or obligation, or suffer any losses or damages, or be subject to any claims, in each case in connection with or related to (x) the Company or its business or operations, including in respect of any of the actions referred to in this sentence, or (y) any of their prior interest in or involvement or association with the Company; provided, that nothing in this Section 10.2(a) shall protect any Founder or Seller from liability for claims of criminal fraud. For the avoidance of doubt, Purchaser shall have no obligation to seek or to engage in any Sale Transaction or to cause a Company Liquidation at any time.

The emphasized section operates to ensure that the "Founders or Sellers" of Chamilia—the parties and their representatives who sold their interests in Chamilia, not Chamilia itself—will not be

liable for Chamilia's ongoing or prior operations, except in the instance of criminal fraud. (See Unit Purchase Agreement at 5-6 (defining "Founders" and "Sellers")). Under a parent/subsidiary relationship, absent some agreement to the contrary, the limited liability will not be abrogated under New Jersey law.[6] State, Dept. of Envtl. Prot. v. Ventron Corp., 94 N.J. 476, 500, 468 A.2d 150, 164 (N.J. 1983) ("Even in the case of a parent corporation and its wholly-owned subsidiary, limited liability normally will not be abrogated."). The Court finds that the Unit Purchase Agreement serves to protect the individual sellers of Chamilia stock from liability, not Chamilia as a corporate entity. The Unit Purchase Agreement therefore does not pass Chamilia's obligations on to Swarovski US as the buyer of its stock.

Lastly, Plaintiff makes the same conclusory alter ego and agency arguments as to liability that it futilely put forth to establish personal jurisdiction.[7] (See Pl.'s Br. in Opp. at 29-30). Plaintiff is correct that this Court previously granted jurisdictional discovery because, in part, certain pled allegations were "probative of an alter ego or agency relationship." Quality Int'l Packaging, Ltd. v. Chamilia Inc., 2014 WL 2465262, at *4. That ruling, however, did not address whether the original Complaint sufficiently pled facts to survive a motion to dismiss under Rule 12(b)(6). The Court, in the very next paragraph, explicitly declined to rule on that issue. Id. It follows that

---

[6] See fn. 4, supra (explaining choice of law in this motion).

[7] Plaintiff did not specifically plead a veil piercing theory of liability, but nevertheless appears to argue that the facts alleged support piercing the corporate veil to reach the Swarovski Defendants. (Pl.'s Br. in Opp. at 29-30). However, the pled facts surrounding the acquisition of Chamilia do not support such a theory. See Bd. of Tr. of Teamsters v. Foodtown, Inc., 296 F.3d 164, 171 (3d Cir. 2002) (elements of veil piercing in New Jersey are: (1) one corporation is organized and operated as to make it a mere instrumentality of another corporation, and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law); see also discussion of the alter ego theory, supra.

17

Plaintiff's argument that "[t]his Court should therefore adhere to the findings of the May 30, 2014 Order" is simply not applicable to the present motion to dismiss. (Pl.'s Br. in Opp. at 30). In determining that this Court does not have personal jurisdiction over the International Swarovski Defendants, supra, this Court already determined that Plaintiff has not set forth allegations sufficient to establish alter ego or agency liability. Because Plaintiff does not appear to raise any additional arguments in its opposition to the 12(b)(6) motion, the Court will adopt its above-mentioned reasoning that Plaintiff has not established alter ego or agency liability over the Swarovski Defendants.[8] See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (in a motion under Rule 8(a), the court must accept all well-pleaded facts as true, but should disregard any legal conclusions).

Accordingly, because Plaintiff has not pled facts sufficient to support a theory by which the Swarovski Defendants may be held liable for Chamilia's liabilities, the Swarovski Defendants' motion will be granted. An appropriate Order dismissing the Amended Complaint as to Swarovski US, Swarovski International, and Daniel Swarovski without prejudice will accompany this Opinion. Plaintiff will be given thirty days to file a Second Amended Complaint which cures, to the extent possible, the deficiencies set forth herein. Because the Swarovski Defendants are no

---

[8] The Court notes that while Plaintiff bears the burden on a 12(b)(2) motion to establish personal jurisdiction through alter ego and agency with competent evidence, Plaintiff's burden to establish alter ego or agency liability on a 12(b)(6) motion is limited to the factual allegations in the Amended Complaint. Compare Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) (setting forth plaintiff's burden to submit pleadings and supporting proofs establishing personal jurisdiction) with Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (12(b)(6) motion should be considered on the pleadings). Although Plaintiff's alter ego and agency arguments with respect to jurisdiction and liability appear to blend together, the Court only considers the allegations in the Amended Complaint and the appropriate pleading standard in determining whether Plaintiff has stated a plausible claim under Rule 12(b)(6) against the Swarovski Defendants.

longer a party to this action, the Court declines to rule on damages at this time.

DATED: _August 5_, 2015

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
**CLAIRE C. CECCHI, U.S.D.J.**